UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THE HIGBEE COMPANY | CIVIL ACTION |
| VERSUS | NO. 06-2848 |
| GREATER LAKESIDE CORP.,<br>CAUSEWAY LLC OF DELAWARE,<br>BROADWELL MANAGEMENT CORP.,<br>AND JEFFREY FIEL | SECTION: "C"(3) |

## ORDER AND REASONS

Before the Court is a Motion for Partial Summary Judgment filed by the defendants, Greater Lakeside Corporation ("Greater Lakeside") and Causeway LLC of Delaware ("Causeway," collectively, "defendants") (Rec. Doc. 109). In the motion, the defendants ask for summary judgment on the plaintiff's rent abatement claim. The plaintiff, The Higbee Company ("Higbee") opposes the motion. The motion is before the Court on the briefs, without oral argument. Having considered the memoranda of counsel, the record and the applicable law, the Court finds that the defendants' motion is **PARTIALLY GRANTED AND PARTIALLY DENIED.**

## I. BACKGROUND FACTS

On April 30, 1957, Higbee predecessor in interest entered an agreement for a lease for the construction and operation of a D.H. Holmes Department Store at Lakeside Mall

("Lakeside") with the predecessor in interest of Causeway.[1]  A final lease was entered into between the parties on October 11, 1957.  The lease, which commenced on April 1, 1959 had a term of 25 years and 6 months, but could be extended through December 31, 2030.  At the present time, there is a Dillard's department store in the leased premises.  This lease has a clause which provides that if the leased premises is damaged by windstorm or any other casualty, but is not untenantable, that Causeway must repair the premises as rapidly as reasonably possible and abate Higbee's minimum rents while the damage is being repaired.[2]

Then on August 29, 2005 Hurricane Katrina made landfall in Southeast Louisiana.  The storm caused substantial damage to the leased premises.  The roof, coping and rooftop air handlers were damaged.  There was also damage to the mechanical and electrical systems, acoustical and drywall ceilings and coves, interior wall and floor coverings and perimeter fixtures and water infiltration.   Furthermore, a portion of the store was allegedly littered with asbestos.

Higbee alleges that its representatives met with a Causeway's representative and their construction consultants to discuss the damage to the leased premises on October 4, 2005 and October 12, 2005.  According to Higbee, the damage has not yet been repaired and as a result, the store is operating in approximately 56% of its total leased space.

Higbee claims that the leased premises' disrepair entitles it to rent abatement. Lakeside

---

[1] For simplicity, "Higbee" or "Causeway" will be used whenever it would be appropriate to refer to Higbee's or Causeway's predecessor in interest.

[2] Higbee's pays a monthly minimum rent for the leased premises.  However, these minium rents are credited toward Higbee's annual percentage rents, which is based on its annual net sales.  The rent arrangement is more specifically detailed below.

2

Mall reopened after Hurricane Katrina on November 10, 2005, but Dillard's did not open until November 16, 2005.  Thus, Higbee claims that it is entitled to 100% rent abatement from the time the mall closed due to Hurricane Katrina (August 29, 2005) until the Dillard's reopened (November 16, 2005).  Also, Higbee asserts that it is entitled to rent abatement due to the reduced operating capacity of the store, or 44% of the rents. Specifically, Higbee claims that it continued to pay all rents due after the storm, including minimum rents of $631,068.87, and percentage rents of $1,174,533.61 for the fiscal year 2005.  It seeks to have portions of that returned and future rent abatement until the store is returned to full operation capacity.

Higbee filed a motion for summary judgment regarding rapid repair and rent abatement. See, Rec. Doc. 16.   After oral argument, the Court denied the motion.  See, Rec. Doc. 31. The defendants now move for partial summary judgment on the issue of rent abatement.

## II. STANDARD OF REVIEW

Summary judgment is only proper when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.  A genuine issue of fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 247-48 (1986); see also *Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001).  When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto Ins. Co.,* 784 F.2d 577, 578 (5th Cir. 1986).

The party moving for summary judgment bears the initial burden of "informing the

district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, however, "the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations." *See Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *Lujan v. Nat'l. Wildlife Fed'n.*, 497 U.S. 871, 871-73 (1990); *Donaghey v. Ocean Drilling & Exploration Co.,* 974 F.2d 646, 649 (5th Cir. 1992).

### III. ANALYSIS

The defendants argue that they do not owe Higbee rent abatement because of the way in which the rent arrangement works.[3] Higbee's rent is based on a percentage of Dillard's annual sales at the leased premises and once annual net sales reach a threshold amount, any minimum rent previously paid is credited against the amount of annual percentage rent due. The defendants point out that the minimum rents are completely eliminated for the entire leased

---

[3] In their opposition to Higbee's motion for summary judgment on rent abatement, the defendants also asserted that rent abatement is not owed because it is Higbee's fault that repairs are not completed. The defendants claimed that Higbee demolished the store rather than allowing them to repair it, because Higbee wanted to use Hurricane Katrina as an excuse to remodel the store at their expense. They claim that the damage was much less severe than what Higbee asserts and that it could have been easily repaired had Higbee not taken it upon itself to demolish the building. The Court, in part, denied Higbee's motion because a genuine issue of material fact existed as to whether Higbee intentionally demolished the store.

premises if the net sales of that store exceed $54,212,889.  The store's sales have reached this every year since 1990, including the 2005-2006 fiscal year. Thus, Higbee's minimum rents for the 2005-2006 fiscal year were credited against its annual percentage rent payment in August 2006.[4]  As a result, the defendants argue that Higbee has no basis to demand a "second rent credit."

Higbee, on the other hand, argues that it is entitled to rent abatement according to the terms of the lease agreement.  It claims that it is entitled to abatement of 100% of minimum rents for the time that Dillard's was closed after Hurricane Katrina, i.e. from August 29, 2005 until November 16, 2005, an amount of $126,368.83.  It also claims that it is entitled to abatement of 44% of the minimum rents per month, or $21,149.33 per month, until the premises is repaired.  Higbee argues that if it is not entitled to minimum rents, the Court would essentially be making that term of the lease agreement meaningless.  It asserts that the credit of minimum rents on percentage rent is irrelevant to whether or not it is entitled to rent abatement.

Under Louisiana law, the interpretation of a contract is an issue of law for the court. *Amoco Prod. Co. v. Texas Meridian Resources Exploration Inc.,* 180 F.3d 664, 668 (5th Cir. 1999) (citing, *Texas Eastern Transmission Corp v. Amerada Hess Corp.*, 145 F.3d 737, 741 (5th Cir. 1998)).  "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." LA. CIV. CODE art. 2046. "A contract provision is not ambiguous where only one of two competing interpretations is reasonable or merely because one party can create a dispute in hindsight."

---

[4] The defendants do not discuss minimum rents that Higbee has paid since July 2006 in this motion.

*Amoco Prod. Co.*, 180 F.3d at 668-69 (quoting, *Texas Eastern,* 145 F.3d at 741.)) "Each provision of a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.  LA. CIV. CODE art. 2050.  The court should not construe the express provisions of a contract in a manner that leads to unreasonable consequences, inequitable, or absurd results. *Makofsky v. Cunningham*, 576 F.2d 1223, 1229 (5th Cir. 1978).

The lease agreement provides for rent abatement in certain situations.  This is outlined in Article XV, Section 2 of the lease agreement which states that:

> [i]n the event the leased premises shall be damaged by fire, explosion, windstorm or any other casualty, but are not thereby rendered untenatable, then [Causeway] . . . shall repair such damage and put the leased premises in good condition as rapidly as reasonably possible and while such damage is being repaired, [Higbee] shall be entitled to an equitable abatement of the Minimum Rent, unless [Causeway] shall establish that such damage was occasioned by the negligence of [Higbee], its agents or employees.

See, Rec. Doc. 16, Ex. A. The lease also contains a formula by which the minimum rents are credited in the annual percentage rents that is based on Higbee's net sales at the Dillard's store. See, Rec. Doc. 109, Wilson Affidavit.  According to this formula, once the store's net sales reach $54,212,889, Higbee's minimum rents are completely eliminated. See, Rec. Doc. 109, Wilson Affidavit.  The Court must interpret each provision so that they both are given meaning suggested by the contract as a whole.

The lease clearly says that Higbee is entitled to abatement of "Minimum Rents," not its annual percentage rents.  As mentioned above, the lease also provides that Higbee's minimum rents are credited against its annual percentage rent and are completely eliminated when a

6

threshold of net sales is met, specifically $54,212,889. Last year, Higbee's net sales at the Dillard's in question were $71,692,884, well in excess of the threshold. Thus, Higbee has already received credit for its minium rents in its payment of its annual percentage rent for 2005-2006. If Higbee were to receive rent abatement for that time period, it would owe the money right back to the defendants because of the annual percentage rent required by the lease agreement. Therefore, although Higbee may be entitled to rent abatement depending on whether it caused the damage to the store, it should not receive any money back as "rent abatement" for the 2005-2006 fiscal year because it would simply owe the money right back to the defendants as percentage rents.

However, the Court cannot grant the defendants' motion for partial summary judgment as it may pertain to rent abatement from July 2006 onward until the store is repaired. There is no evidence as to whether the Dillard's store located at the leased premises has reached the $54,212,889 threshold for the 2006-2007 fiscal year. If it has not, or does not, by July 31, 2007, the end of the fiscal year, then Higbee may be entitled to rent abatement for that time, depending on whether or not Higbee was the cause of the damage. There is a genuine issue of material fact regarding the cause of the damage, therefore, summary judgment as to rent abatement for the 2006-2007 fiscal year minimum rents and any future rents until the leased premises is repaired is inappropriate.

## IV. CONCLUSION

For the reasons stated above,

IT IS ORDERED that the defendants' Motion for Partial Summary Judgment is

**PARTIALLY GRANTED AND PARTIALLY DENIED.**

IT IS FURTHER ORDERED that the defendants' request for attorneys' fees and expenses in connection with this motion is hereby **DENIED**.

New Orleans, Louisiana this 20th day of April, 2007.

_____
HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE