# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

**THE HIGBEE COMPANY**                                          **CIVIL ACTION**

**VERSUS**                                                              **NO. 06-2848**

**GREATER LAKESIDE CORP.,**                             **SECTION "C" (3)**
**CAUSEWAY LLC OF DELAWARE,**
**BROADWALL MANAGEMENT CORP.**
**and JEFFREY FEIL**

## ORDER AND REASONS

Before the Court are three motions for partial summary judgment or summary judgment by defendants Greater Lakeside Corp., Causeway LLC, Broadwall Management Corp., and Jeffery Feil (collectively "defendants"). These include a 1) motion for summary judgment by all defendants to dismiss plaintiff's sixth cause of action for conspiracy and seventh cause of action for alleged violations of the Louisiana Unfair Trade Practices Act ("LUTPA") (Rec. Doc. 180); 2) a motion by defendant Causeway LLC for partial summary judgment dismissing plaintiff's claim for breach of lease based upon alleged failure to maintain insurance and alleged "attempt to manipulate" insurance allocation (Rec. Doc. 181); and 3) a motion by all defendants for partial summary judgment on claim for pre-Katrina asbestos remediation (Rec. Doc. 182). For the reasons set forth below, the first of these motions is DENIED, the second is GRANTED and

the third is GRANTED.

Summary judgment is only proper when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.  A genuine issue of fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 247-48 (1986); *see also Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001).  When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion."  *Reid v. State Farm Mut. Auto Ins. Co.,* 784 F.2d 577, 578 (5th Cir. 1986).  The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, however, "the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."  *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995).  In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations."  *See Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *Lujan v. Nat'l. Wildlife Fed'n.*, 497 U.S. 871, 871-73 (1990); *Donaghey v. Ocean Drilling & Exploration Co.,* 974 F.2d 646, 649 (5th Cir. 1992).


I.      **Sixth and Seventh Causes of Action: Conspiracy and LUTPA claims**

Defendants have moved for summary judgment dismissing plaintiff's sixth and seventh

causes of action, as they remain following this Court's previous order of January 22, 2007 regarding these claims. In that order, the Court dismissed plaintiff's claims under LUTPA which alleged that the defendants violated that statute by disallowing Higbee to participate in the insurance adjustment process, insisting that Higbee use its own insurance money to pay the defendants' obligations, and refusing to provide copies of their insurance policies. Complaint ¶ 116. The Court reasoned that these claims involve the parties landlord/tenant relationship, which is not a business competitor relationship. However, the Court found that judgment on the pleadings was not appropriate for plaintiff's further allegations that defendants tried to tie the repairs of storm damage to attempts to recapture certain leasehold interests. Complaint ¶ 117. These claims go to an alleged business competitor relationship between the parties in the field of leasing retail property. As a result of that decision, the Court also permitted Higbee's conspiracy allegations that related to this LUTPA claim to go forward.

Defendants now argue that, following discovery on this claim, plaintiff has not and cannot establish that it has standing as a business competitor under LUTPA, or that it has suffered damages as a result of defendants' alleged wrongful conduct under LUTPA, and that therefore they are entitled to judgment as a matter of law on this claim. They argue that a private right of action is available under LUTPA only to business competitors and consumers. It has now become clear that plaintiffs "competing business" is exclusively a result of its sublease to Goodyear, governed by the Lease between Higbee and Lakeside, and thus entirely part of the landlord/tenant relationship between the parties. Thus, defendants argue, this claim must fail.

Under the LUTPA, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are ... unlawful." LA REV. STAT. ANN. §

51:1405(A).  Parties who are harmed by another party's unfair or deceptive practice may bring

suit to recover actual damages.  LA REV. STAT. ANN. § 51:1409.  Although the plain text of

section 1409 states that "any person who suffers any ascertainable loss"  as a result of such acts

may bring suit, *id*., the Fifth Circuit has limited relief to personal consumers or business

competitors.  *See, e.g.*, *Orthopedic & Sports Injury Clinic v. Wang Laboratories, Inc.*, 922 F.2d

220 (5th Cir. 1991); *Gardes Directional Drilling v. U.S. Turnkey Drilling Exploration Co.*, 98

F.3d 860 (5th Cir. 1996).  In order to qualify as a business competitor, the plaintiff must actually

or potentially engage in business that competes directly or indirectly with the defendant.  *Traina*

*v. Nationsbank of Texas, N.A.*, 2001 WL 1041773 (E.D.La. 2001).

As this Court noted in *5-Star Finance, Inc. v. Wood*, 2000 WL 1532896 (E.D. La) (J.

Berrigan), reconsideration of the Fifth Circuit's opinion may be in order, especially in light of

the expansive language offered by the Louisiana Court of Appeals in *Capitol House*

*Preservation Co., L.L.C. v. Perryman Consultants, Inc.*, 725 So.2d 523, 530, 1998-1514 (La.

App. 1 Cir. 12/10/1998).[1]  *See also discussion in Hamilton v. Business Partners, Inc.,* 938

F.Supp. 370, 371-74 (E.D.La. 1996) (J. Berrigan).  However, this Court has consistently held, as

in *5-Star Finance*, that because the Fifth Circuit precedent stands, it is prevented from

entertaining claims by plaintiffs who are not consumers or business competitors under the

statute.[2]  But the defendants ask the Court to go a step further; in addition to the significant

---

[1] "Although business consumers and competitors are included in the group afforded this private right of action, Louisiana courts have repeatedly held they are not its exclusive members." *Capitol House Preservation Co.*, 725 So.2d at 530.  "Federal jurisprudence has indicated otherwise." *Id.* at 530 n.11.

[2] *See also Hamilton*, 938 F.Supp. at 374.

limitation on the meaning of "any person" that exists under current Fifth Circuit precedent, the defendants would have this Court limit the plain meaning of "business competitor" to exclude all parties who are also in a landlord/tenant relationship.   This the Court will not do.

The plaintiffs have produced evidence to support their claim that they are in fact engaged in actual or potential competition, whether direct or indirect, with the defendants to lease limited retail space in the Lakeside Shopping Zone.  Though the defendants essentially argue as a matter of law that because that competition arises out of a sublease under their governing landlord/tenant relationship, Higbee and Lakeside cannot be "business competitors" under LUTPA, they cite no additional legal support for such a reading.  Perhaps defendants' base their theory on a misreading of the January 22, 2007 order, which dismissed some of Higbee's LUTPA claims on the grounds that they were based solely on the parties' relationship as landlord/tenant.  While a landlord/tenant relationship, by itself, may not be *enough* for standing under LUTPA, defendants point to nothing in Louisiana or Fifth Circuit case law that *precludes* standing under LUTPA on that basis.  At most, defendants argue that because they have consented to such competition by virtue of the lease between Higbee and Lakeside, they can not be "business competitors."  Again, defendants point to nothing in the case law that a party can not allow, via a lease, for a lessee to compete with it in the field of leasing retail property.

It appears, based on the facts of this case, that it is possible for a landlord and tenant to also be business competitors, as that concept is generally understood.  Retail space in the profitable Lakeside Shopping Zone is limited.  This does not seem to be in dispute.  It appears that Lakeside would like to acquire more of this limited space by recapturing the building that Goodyear currently subleases from Higbee, thereby retaining profits from rent that Higbee

5

currently derives from this property.  It thus appears that they may compete for the rents

derivable from this limited  rental space in the shopping zone.  Of course, the Court does not

decide whether the means by which Lakeside has attempted to accomplish this recapture violated

the LUTPA.   But it does find that Higbee has presented sufficient evidence to raise the question

whether there was in fact a "business competitor" relationship here, and whether defendants'

actions violated LUTPA.

       The Court herein decides that it cannot, in this summary judgment posture, decide as a

matter of law that Higbee and Lakeside are not business competitors in the leasing of retail space

in the limited Lakeside Shopping Zone.  The cases cited above and by the parties present factual

situations where the courts decided as a matter of law that the entities at issue were not "business

competitors."  The interpretation of a statute is ordinarily an issue of law for a court to decide.

However, the limitation of the private right of action under LUTPA to personal consumers and

business competitors is a judge-made limitation, and the question of whether a business

competition exists in any situation is particularly fact-bound.  *See, e.g.,* AMERICAN HERITAGE

DICTIONARY OF THE ENGLISH LANGUAGE 271, (William Morris, ed., 1976) (defining

"competition" as "1. A striving or vying with another or others for profit, prize, position, or the

necessities of life; rivalry. ... 3. The rivalry between two or more businesses striving for the same

customer or market").  There will be a jury trial in this case.  The Court thus invites pre-trial

briefing on the issue of whether the Court should or must decide whether the parties are in fact

"business competitors" in this case, or whether this issue should or must wait to be decided at

trial by the jury.

       Because the Court ruled in its January 22, 2007 that plaintiff's claim of conspiracy (its

sixth cause of action) as it relates to its LUTPA claim could go forward, *see* Rec. Doc. 86, and

because this Court finds that there exist material issues of fact as to plaintiff's LUTPA claim,

summary judgment as to the sixth cause of action is also inappropriate.

In addition, this Court has recently ruled that plaintiff's have produced sufficient

evidence of proof of causation of damages under its lost profits claim.  See Rec. Doc. 91.  The

same evidence of causation that supports that claim,[3] as well as evidence of defendants' attempts

to tie

recapture of the Goodyear space to storm related rebuilding and fulfillment of other lease

obligations, demonstrates genuine issues of material fact as to the LUTPA claim that should

properly be determined by the trier of fact at trial.


II.     **Claim of Breach of Lease for failure to maintain insurance "attempt to manipulate insurance allocation**

Defendant Causeway LLC moves for partial summary judgment dismissing plaintiff's

claim for breach of lease based upon the defendant's alleged failure to maintain insurance and

alleged attempt to manipulate the insurance allocation.  While plaintiff opposes this motion with

regard to its claim for insurance manipulation, plaintiff now agrees with the defendant that it had

in place a sufficient amount of gross insurance coverage to fulfill its contractual obligations with

Dillard's.  As a result,  plaintiff states that it will "dismiss" its claim as to insufficient insurance

---

[3] The Court notes that plaintiff, in order to prevail on its LUTPA claim, will have to demonstrate to the jury that it suffered an "ascertainable loss" as a result of actions that violate LUTPA.  The Court here finds that plaintiff has provided sufficient evidence of lost profits that a jury could find that it suffered such an ascertainable loss. It appears, however, that any such damages are coextensive with its claimed damages under its lost profits claim. The plaintiff states as much.  *See* plaintiff's memo. in opposition at 4.

coverage.   The Court dismisses this claim with prejudice.

For the remaining portion of the claim, that the defendant attempted to manipulate the insurance allocation due to Dillard's under the lease, the defendant argues that Dillard's has not and cannot prove any damages arising out of the alleged manipulation.  The defendant notes that the lease provides in the event of a casualty causing damage to the leased premises that all insurance proceeds "shall be applied to the cost of repairing and rebuilding."  Any excess expense is to be borne by the lessor, and any surplus insurance proceeds are to be retained by the lessor.  Thus, Causeway argues, even if it were motivated by some "self-destructive impulse to steer insurance proceeds away from repair of the Dillard's store, no damages would flow from such manipulation as Causeway would be liable for the repair regardless of whether there was a manipulation."[4] In addition, the damages sought for the alleged manipulation are the same damages sought for other purported breaches of the lease, and plaintiff must prove one of these other breaches to succeed on its claim for "manipulation" damages.  Thus even if plaintiff could succeed in establishing manipulation, it would not be entitled to any additional relief, i.e. no damages would flow from the manipulation claim itself.[5]

As a logical matter, the defendant appears to be correct.  "Insurance manipulation,"

---

[4] Reply memo. of Causeway in support of its motion for summary judgment, Rec. Doc. 218  at 2.

[5] Defendants also argue in passing that Dillard's improperly attempts to untimely supplement prior deficient responses to interrogatories seeking further delineation of its insurance manipulation claim.  *Id*. at 2-3.  Defendant also references the argument set forth in its motion for partial summary judgment on the claim for "lost profits" and to exclude the expert report of George Panzeca.  This Court has already ruled that it will not preclude the use of the plaintiff's supplemental responses, that the plaintiff has provided sufficient evidence to survive summary judgment as to its lost profits claim, and that it will not strike the expert report of Panzeca or preclude his testimony.  Rec. Doc. 228.

independent of either the lease requirement of maintaining a sufficient amount of insurance, which the plaintiff concedes the defendant did, or the other claims for breach of lease (lost profits, failure to repair the roof and HVAC system, etc.) does not appear by itself to be a breach of the lease.[6]  As defendant itself admits, if it is required under the lease for the repair of those things, it would be liable regardless of whether there was a manipulation.  Said another way, Dillard's has to prove one of the other breaches to succeed on its claim for "manipulation" damages.

The plaintiff asserts that it has provided evidence of damage under its manipulation claim in its supplemental responses to interrogatories nos. 1, 3, 4, 5, and 12, related to the cost of rebuilding the store, asbestos remediation, lost profits, replacement of the roof, and other damages.  All of this appears to be related to plaintiff's other claims for breach of the lease. Again, if plaintiff is entitled to the repair and replacement cost and any further damages that resulted from the defendants' alleged breach of the lease related to these claims, the defendant would be liable, regardless of insurance manipulation.  The plaintiff appears not to have presented evidence of any damages based independently on alleged manipulation of the insurance allocation.

To the extent that the plaintiff pleads an independent cause of action for damages stemming from any "manipulation" by defendants of the insurance allocation, defendants are entitled to summary judgment.  However, the Court will not strike plaintiff's allegations of

---

[6] By prior order, this Court has ruled that the plaintiff did not have any ownership interests in the proceeds, and that Causeway is required to expend sufficient sums to repair casualty damage to the premises regardless of the amount of available insurance. Rec. Doc. 87, order and reasons, Jan. 22, 2007.

manipulation of the insurance coverage as it relates to its other claims for breach of lease.[7]

### III.    Claim for Pre-Katrina Asbestos Remediation

In its complaint, plaintiff asserts a claim for damages for various pre-Katrina asbestos remediation expenses.  Defendants filed a motion for partial summary judgment to dismiss this claim, which it argues prescribed long ago under LA. CIV. CODE ART. 3499.  In addition, defendants argue  that regardless of prescription,  plaintiff has responsibility under the lease for such remediation expenses.  Plaintiff responded by voluntarily withdrawing its claim for reimbursement of expenses for asbestos abatement that occurred prior to the hurricane. However, plaintiff states that it does not waive or otherwise dismiss any other claims to this action, nor does it admit any of the statements advanced as uncontested facts.  Without addressing the merits of defendants' motion, the Court finds that plaintiffs claim for pre-Katrina asbestos remediation should be dismissed.

### IV. Conclusion

For the foregoing reasons,

IT IS ORDERED that the motion for summary judgment by  defendants to dismiss plaintiff's sixth cause of action for conspiracy and seventh cause of action for alleged violations of LUTPA is hereby DENIED. Rec. Doc. 180.

IT IS FURTHER ORDERED that the motion by defendant Causeway LLC for partial

---

[7] The Court notes that such evidence may also be relevant to the plaintiff's remaining LUTPA claims, discussed above.

summary judgment dismissing plaintiff's claim for breach of lease based upon alleged failure to maintain insurance and alleged "attempt to manipulate" insurance allocation is hereby GRANTED as outlined above.  Rec. Doc. 181.

IT IS FURTHER ORDERED that the motion by all defendants for partial summary judgment on claim for pre-Katrina asbestos remediation is hereby GRANTED.  Rec. Doc. 182.

New Orleans, Louisiana, this 5th day of November, 2007.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE